**Slip Op. 09–149**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| ARKO FOODS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | **Before: Gregory W. Carman, Judge** <br><br> Court No. 07-00274 <br><br> **PUBLIC** |

[*Plaintiff's motion for partial summary judgment is granted in part and denied in part, and Defendant's cross motion for summary judgment is granted in part and denied in part. The Court finds the appropriate tariff classification is a tariff subheading advanced by neither party. Judgment to be entered accordingly.*]

Law Offices of Michael R. Doram (Michael R. Doram) for Plaintiff.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jason Matthew Kenner, Mikki Cottet); Michael Heydrich, Office of Assistant Chief Counsel, Int'l Trade Litigation, U.S. Customs and Border Protection, of counsel, for Defendant.

December 22, 2009

**OPINION**

**CARMAN, JUDGE:** This matter is before the Court on a Motion for Partial Summary

Judgment by Plaintiff Arko Foods and a Cross Motion for Summary Judgment by

Defendant United States. The parties are in dispute over the correct tariff classification of a frozen dessert known as mellorine, imported by Plaintiff. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff is an importer of mellorine from the Philippines.[1] The parties are not in dispute as to the nature of mellorine: it is marketed and sold as a frozen dessert, with a consistency and manner of consumption similar to ice cream; it is eaten in a frozen state in bowls, ice cream cones and sundaes.[2] The six specific varieties of mellorine involved in this lawsuit are Ube Royale (made with purple yam), Quezo Royale (also known as Quezo Real) (made with cheese), Fruit Salad, Mango, Macapuno (made with coconut preserve), and Durian.[3] Mellorine is manufactured from a variety of ingredients, including water, refined sugar, vegetable oil, fruit puree or preserve, corn syrup, skim

---

[1]Plaintiff's Separate Statement of Undisputed Material Facts ("Pl.'s Facts") ¶ 2 (Docket # 34), Defendant's Response to Plaintiff's Separate Statement of Undisputed Material Facts ("Def.'s Resp. Facts") ¶ 2 (Docket # 46); Defendant's Public Statement of Material Facts As To Which There Are No Genuine Issues To Be Tried ("Def.'s Facts") ¶ 1 (Docket # 36), Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s Resp. Facts") ¶ 1 (Docket # 48).

[2]Pl.'s Facts ¶¶ 3, 4, Def.'s Resp. Facts ¶¶ 3, 4; Def.'s Facts ¶¶ 16, 17, Pl.'s Resp. Facts ¶¶ 16, 17.

[3]Pl.'s Facts ¶¶ 17, 21, Def.'s Resp. Facts ¶¶ 17, 21; Def.'s Facts ¶ 9, Pl.'s Resp. Facts ¶ 9.

milk powder, whey, stabilizers, emulsifiers, artificial food flavors, and maltodextrin.[4]

Depending on variety, mellorine may also contain cheese, whole milk powder, purple

yam or pieces of fruit.[5] Mellorine is manufactured by adding fruit or vegetable purees

and artificial colors and flavors to a base mixture, and then partially freezing the result.[6]

Once partially frozen, distinguishing fruit preserves, vegetable pieces or cheese are then

added, before the product is completely frozen, packaged and ready for sale.[7]

Customs and Border Protection ("Customs") classified Plaintiff's mellorine

under HTSUS heading 2105 for "Ice cream and other edible ice, whether or not

containing cocoa."[8] Specifically, Customs classified mellorine under HTSUS

subheading 2105.00.40,[9] which applies to "dairy products described in additional U.S.

---

[4]Pl.'s Facts ¶ 22, Def.'s Resp. Facts ¶ 22; Def.'s Facts ¶ 20, Pl.'s Resp. Facts ¶ 20.

[5]Pl.'s Facts ¶ 22, Def.'s Resp. Facts ¶ 22.

[6]Def.'s Facts ¶¶ 11, 12, Pl.'s Resp. Facts ¶¶ 11, 12.

[7]Def.'s Facts ¶¶ 14, 15, Pl.'s Resp. Facts ¶¶ 14, 15.

[8]Pl.'s Facts ¶ 24, Def.'s Resp. Facts ¶ 24.

[9]Compl. ¶ 19, Ans. ¶ 19.

note 1 to chapter 4."[10] Additional U.S. note 1 to chapter 4 encompasses three categories

of dairy products, separated by semicolons.[11] Customs classified Plaintiff's product

under HTSUS subheading 2105.00.40 because it regards mellorine as falling within the

first of these three categories as an "article[] of milk or cream."

---

[10]The relevant portion of Chapter 21 of the HTSUS reads:

2105        Ice cream and other edible ice, whether or not containing cocoa:

       . . .

          Other:

             Dairy products described in additional U.S. note 1 to chapter 4:

             . . .

2105.00.30              Described in additional U.S. note 10 to chapter 4 and entered pursuant to its provisions

2105.00.40              Other

heading 2105, HTSUS (2005).

[11]In its entirety, Additional U.S. note 1 to Chapter 4 of the HTSUS reads:

For the purposes of this schedule, the term "<u>dairy products described in additional U.S. note 1 to chapter 4</u>" means any of the following goods: malted milk, and articles of milk or cream (except (a) white chocolate and (b) inedible dried milk powders certified to be used for calibrating infrared milk analyzers); articles containing over 5.5 percent by weight of butterfat which are suitable for use as ingredients in the commercial production of edible articles (except articles within the scope of other import quotas provided for in additional U.S. notes 2 and 3 to chapter 18); or, dried milk, whey or buttermilk (of the type provided for in subheadings 0402.10, 0402.21, 0403.90 or 0404.10) which contains not over 5.5 percent by weight of butterfat and which is mixed with other ingredients, including but not limited to sugar, if such mixtures contain over 16 percent milk solids by weight, are capable of being further processed or mixed with similar or other ingredients and are not prepared for marketing to the ultimate consumer in the identical form and package in which imported.

## PROCEDURAL BACKGROUND

Plaintiff moves the Court for partial summary judgment, asking the Court "to issue an order determining that [General Rule of Interpretation] GRI 3(b) controls the proper tariff classification of mellorine and to construe the term 'articles of milk' in additional U.S. note 1 to Chapter 4 to exclude merchandise in which milk constitutes a minor ingredient, compared to the predominant ingredients."[12] Defendant moves the Court for summary judgment in favor of its proffered classification, asserting that mellorine is properly classified as "ice cream and other edible ice" and as a "dairy product described in additional U.S. note 1 to Chapter 4."[13]

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(a). "Partial summary judgment is appropriate when it appears that some aspects of a claim are not genuinely controvertible and genuine issues remain regarding the rest of the claim." Ugg Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F.Supp. 848, 852 (1993) (quotations and citations omitted). Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c).

---

[12]Pl.'s Mot. for Partial Summ. J. ("Pl.'s MSJ") 2 (Docket # 34).

[13]Def.'s Mot. Summ. J. ("Def.'s MSJ") 3-4 (Docket # 36).

Under 28 U.S.C. § 2639(a)(1),[14] "a classification of merchandise by Customs is presumed to be correct . . . [so] the burden of proof is upon the party challenging the classification." Rollerblade, Inc. v. United States, 282 F.3d 1349, 1352 (Fed. Cir. 2002) (internal quotations and citations omitted). A party challenging Customs' preferred classification may satisfy its burden of proof simply by demonstrating that Customs' classification is incorrect, without necessarily providing the correct classification. See Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984). Ultimately, it is "the court's duty . . . to find the correct result, by whatever procedure is best suited to the case at hand." Id. The Court of International Trade reviews Customs' protest decisions "upon the basis of the record made before the court." 28 U.S.C. § 2640(a)(1).

When there is a dispute over classification, the court first undertakes the legal question to "construe the relevant classification headings" and then undertakes the factual question to "determine under which of the properly construed tariff terms the merchandise at issue falls." Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). When "the nature of the merchandise is undisputed, . . . the

---

[14]The statute reads:

Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.

28 U.S.C. § 2639(a)(1) (2006).

classification issue collapses entirely into a question of law." Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted).

## DISCUSSION

### I. Mellorine Is Properly Classifiable Under HTSUS Heading 2105

#### A. Parties' Contentions as to HTSUS Heading

The first challenge Plaintiff brings in its motion for partial summary judgment is to the appropriate tariff heading of the HTSUS for mellorine. Plaintiff contends that mellorine is a "composite good" and therefore should be classified according to GRI 3(b).[15] Plaintiff asserts that if GRI 3(b) controls classification, mellorine would either fall under heading 0811, which covers "fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter," or heading 2106, which covers "[f]ood preparations not elsewhere specified or included."[16] Plaintiff argues for heading 0811 on the basis of the large quantity, by

---

[15] Pl.'s MSJ 1-2. Rule 3 of the General Rules of Interpretation of the Harmonized System reads, in pertinent part:

When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:

. . .

(b) Mixtures, composite goods consisting of different materials or made up of different components . . . shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

[16] Compl. ¶¶ 22-36; Pl.'s MSJ 4-5.

weight, of fruit in each of the varieties of mellorine.[17]

Defendant responds by asserting that only products with "small quantities of sugar" may be classified in heading 0811, and that products such as mellorine, which contain "significant levels of sugar and syrups" cannot be so classified.[18] Defendant also asserts that the small quantities of sugar permitted in frozen fruit and nuts under heading 0811 may only be added in order to "inhibit oxidation and thus prevent[] the change of colour which would otherwise occur, generally on thawing out," and that sugar is not added to Plaintiff's mellorine for that purpose.[19] Last, Defendant argues that the presence of multiple additional ingredients including "vegetable oil, skim milk powders, corn syrup, stabilizers, emulsifiers, artificial flavors, artificial colors, and maltodextrin" means that mellorine is not prima facie classifiable under heading 0811.[20]

Defendant also advances arguments in support of its own preferred tariff classification, heading 2105. Defendant asserts that the heading for "Ice cream and other edible ices" is an *eo nomine* provision, and that products described by the specific

---

[17]Pl.'s MSJ 5-6.

[18]Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. ("Def.'s Resp.") 7-8 (Docket # 46) (citing Explanatory Notes to Chapter 8 HTSUS).

[19]Id. 8 (citing Harmonized Commodity Description and Coding System Explanatory Notes ("Explanatory Notes") to Chapter 8 HTSUS).

[20]Id. at 9.

name of the heading are therefore appropriately classified in that heading.[21] For a definition of what constitutes an "edible ice," Defendant points to a food science textbook which states

> The broad term, frozen desserts, refers to ice cream and related products. Specific products include ice cream and its lower fat varieties, frozen custard, frozen yogurt, mellorine (vegetable fat frozen dessert), sherbet, water ice and frozen confections. Some of these desserts are served either soft frozen or hard frozen. . . . **The broader category, frozen desserts, also called edible ice, includes products that contain no milk-derived ingredients, e.g., water ices.**

(Def.'s MSJ 10 (quoting Ice Cream 1 (2003 6th edition) (emphasis added)).) Defendant also cites to the explanatory notes for heading 2105 which state "[t]his heading covers ice cream, which is usually prepared with a basis of milk or cream, and other edible ice (e.g. sherbet and iced lollipops) whether or not containing cocoa in any proportion."[22] Finally, Defendant points to regulations issued by the Food and Drug Administration (FDA) which indicate that ice cream, mellorine and sherbet are all members of a broader category of "frozen desserts."[23]

### B.    Analysis of HTSUS Heading

HTSUS GRIs direct the proper classification of all merchandise and are "applied

---

[21]Def.'s MSJ 8-9.

[22]Id. (citing Explanatory Notes to heading 2105).

[23]Def.'s MSJ 11 (citing 21 C.F.R. Part 135 (2006).)

in numerical order." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir.

1999). The court may not consult any subsequent GRI unless the proper classification

cannot be determined by reference to GRI 1. Conair Corp. v. United States, 29 CIT 888,

891 (2005) (citing Mita Copystar Am. v. United States, 160 F. 3d 710, 712 (Fed. Cir. 1998).

According to GRI 1, "classification shall be determined according to the terms of the

headings and any relative section or chapter notes[.]" HTSUS GRI 1.

The heading under which Customs classified mellorine is HTSUS 2105, "Ice

cream and other edible ice, whether or not containing cocoa." HTSUS heading 2105.

Mellorine is not ice cream, nor do the parties contend that it is, so the first issue for the

Court to decide is whether mellorine is an "other edible ice" within the meaning of this

heading.[24] The term "other edible ice" is not explicitly defined within the HTSUS, and

the Court of Appeals for the Federal Circuit has explained that in such circumstances,

the court

> may rely upon its own understanding of terms used, and may consult
> standard lexiographic and scientific authorities to determine the common
> meaning of a tariff term. In addition, the court may look to the Explanatory
> Notes accompanying a tariff subheading as a persuasive, but not binding,
> interpretative guide.

Value Vinyls, Inc. v. United States, 568 F.3d 1374 (Fed. Cir. 2009) (internal citations and

quotations omitted). After conducting such analysis, the Court concludes that "other

---

[24]An *eo nomine* provision is one "in which an item is identified by name." Len-
Ron Mfg. Co., Inc. v. United States, 334 F.3d 1304, 1308 (Fed. Cir. 2003).

edible ice" plainly includes mellorine.

The Court is persuaded by the three authorities cited by Defendant that mellorine is a type of edible ice within the meaning of heading 2105. First, the Court notes that the food science textbook cited by Defendant indicates that the term "edible ice" is interchangeable with the term "frozen dessert." See Robert T. Marshall, H. Douglas Goff & Richard W. Hartel, Ice Cream 1 (6th ed. 2003). As both parties have acknowledged that mellorine is a frozen dessert,[25] it follows that mellorine is also an edible ice. Second, the Explanatory Notes for heading 21.05 list as examples of other edible ice: "sherbet, iced lollipops." Explanatory Notes 21.05. Sherbet, like mellorine, is a frozen dessert with some dairy component; a dictionary definition of sherbet is "a water ice to which milk, egg white, or gelatin is added before freezing." Webster's Third New International Dictionary 2094 (1981). The Court is persuaded that the composition of mellorine is sufficiently similar to sherbet to warrant the conclusion that mellorine is also a type of "edible ice" within the meaning of heading 2105. Third, the Food and Drug Administration regulations have grouped ice cream, goat's milk ice cream, mellorine, sherbet and water ices under the heading "frozen dessert," which is further persuasive evidence in support of Customs' position. See 21 C.F.R. Part 135 (2006). Taken together, the Court concludes that these three sources provide substantial

[25]Pl.'s Facts. ¶ 2-3, Def.'s Resp. Facts ¶ 2-3.

justification for the conclusion that mellorine is an "other edible ice" within the meaning of HTSUS heading 2105.

Having concluded that HTSUS 2105 is the appropriate heading for classifying mellorine, Plaintiff's second argument, that GRI 3(b) dictates that mellorine should be classified under heading 0811 as "fruit and nuts" is unavailing.[26] Resort to a later numbered GRI is inappropriate if the correct heading for the product in question can be determined under GRI 1, as in this case. See Conair Corp., 29 CIT at 891. Moreover, mellorine does not meet the threshold requirement which permits classification pursuant to GRI 3(b); it is not *prima facie* classifiable under more than one heading. Mellorine, which the parties agree is "similar to ice cream in consistency and manner of consumption,"[27] "is eaten frozen in bowls, ice cream cones and sundaes,"[28] and is sometimes "referred to as imitation ice cream,"[29] is not made "fruit and nuts" for tariff classification purposes simply because select varieties of mellorine are flavored with such ingredients. Consequently, as to the issue of the correct HTSUS heading, the Court finds that mellorine is classifiable under heading 2105 as "Ice cream and other edible

---

[26]See Compl. ¶¶ 22-35.

[27]Def.'s Facts ¶ 16; Pl.'s Resp. Facts ¶ 16.

[28]Def.'s Facts ¶ 17; Pl.'s Resp. Facts ¶ 17.

[29]Def.'s Facts ¶ 18; Pl.'s Resp. Facts ¶ 18.

ice, whether or not containing cocoa."

## II. Mellorine Is Not An Article Of Milk Or Cream Within The Meaning Of Additional U.S. Note 1 to Chapter 4 of the HTSUs

### A. Parties' Contentions

The Court now turns to the question of the appropriate subheading for the product in this case. Defendant classified mellorine under HTSUS subheading 2105.00.40, as "dairy products described in additional U.S. note 1 to Chapter 4," because it maintains that mellorine is an "article[] of milk or cream."[30] Plaintiff argues that mellorine is not an article of milk or cream, and therefore is not a dairy product described in additional U.S. note 1 to Chapter 4.[31]

As support for its position that mellorine is an article of milk or cream, Defendant points to a Customs tariff classification ruling from 1993: HQ 952776.[32] In this ruling, the agency determined that "beverages which contain over 5 percent milk solids are considered to have an appreciable amount of milk." Customs Headquarters Ruling Letter (February 10, 1993) ("HQ 952776"). The products classified in this ruling letter were three flavors of protein drink, each of which were comprised chiefly of water, sweetener and nonfat dry milk. Id. Defendant asserts that since issuing this

---

[30]Ans. ¶ 19; Def.'s MSJ 14-18.

[31]Pl.'s MSJ 5-7.

[32]Def.'s MSJ 16.

ruling, Customs has consistently "applied that 5% standard in determining what is an article of milk," and this ruling letter is consequently owed <u>Skidmore</u> deference and speaks persuasively on the appropriate classification of mellorine.[33]  Defendant's position is that mellorine contains more than 5% milk, ergo it is an article of milk or cream.[34]

The Plaintiff offers two legal bases for its position that mellorine is not an article of milk or cream.  First, Plaintiff points to <u>Wilsey Foods, Inc. v. United States</u>, 18 CIT 212 (1994).  In <u>Wilsey Foods</u>, the court construed a similar phrase to the one at issue in this litigation – "food preparations of milk or cream" – under HTSUS 1901.90.3030.  <u>Id.</u>  The court found that the product in question was not a food preparation of milk or cream because "milk or cream [was] not the essential ingredient, not the ingredient of chief value, nor [was] it the preponderant ingredient[.]"  <u>Id.</u>, at 213.  The court went on to note that the products were "comprised chiefly of vegetable fat and sugar and in any event were not considered milk or cream products in the industry."  <u>Id.</u>  Plaintiff asserts that under this rubric, mellorine also is not an article of milk or cream.[35]

Plaintiff goes on to point out that Customs itself actually relied on the framework

---

[33]Def.'s MSJ 16-17 (<u>citing</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 135 (1944).)

[34]<u>Id.</u> at 15-16.

[35]Pl.'s MSJ 5; Pl.'s Opp. to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Resp.") 2-3 (Docket # 47).

of <u>Wilsey Foods</u> in another classification ruling, and that this ruling should be accorded <u>Skidmore</u> deference in the present case.[36] Plaintiff points to Customs Headquarters Ruling Letter HQ 965771, in which Customs determined that white chocolate with sweetener was not an article of milk or cream because, "the Court of International Trade has ruled in <u>Wilsey Foods</u> . . . that products which are comprised chiefly of vegetable fat and sugar are not to be classified as articles of milk or cream."[37] Plaintiff argues that because mellorine is comprised chiefly of vegetable fat and sugar, it too should not be classified as an article of milk or cream.[38]

The government contends that mellorine is an article of milk or cream, even under the rubric of <u>Wilsey Foods</u>. It asserts that "the dairy ingredients in the mellorine at issue are essential because mellorine is legally required to contain a significant percentage of dairy."[39] Defendant also relies on the testimony of its expert witness, Dr. Bradley, that the frozen dessert industry considers mellorine to be a dairy product.[40]

It should be noted that Arko Foods previously received a tariff classification

---

[36]Pl.'s Resp. 3-4.

[37]<u>Id.</u> <u>citing</u> Customs Headquarters Ruling Letter (Oct. 17, 2002) ("HQ 965771").

[38]<u>Id.</u>

[39]Def.'s Resp. 8 (<u>referring</u> <u>to</u> the standard of identity for mellorine, including non-fat milk solids provided in 21 C.F.R. § 135.130(a)).

[40]<u>Id.</u> at 7 (<u>citing</u> Def.'s Ex. F at 54).

letter for mellorine which determined the product was classifiable under HTSUS 2105.00.3000[41] or 2105.00.4000 as a dairy product described in additional U.S. note 1 to chapter 4. New York Ruling Letter (August 23, 2001) "NYRL H83504". Notably, however, the government does not argue that this ruling letter is controlling on the Court's current decision, or even persuasive on the issue of classification.[42] Plaintiff also argues prophylactically that because the ruling letter "was not adopted pursuant to a deliberative notice and comment rulemaking process," it is not proper to accord the ruling Skidmore deference.[43]

**B.      Analysis**

In a dispute over classification the Court is obliged to determine "the proper meaning of the tariff provisions at hand." Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997.) Here, the Defendant asserts that of the various categories

---

[41]2105.00.30 is for products "[d]escribed in additional U.S. note 10 to chapter 4 and entered pursuant to its provisions." 2105.00.30, HTSUS. Additional U.S. note 10 to chapter 4 is a quota provision limiting the quantity of goods importable under this subheading to "4,105,000 kilograms" in any calendar year. Additional U.S. note 10 to chapter 4, HTSUS. After the quota has been met, goods that would be entered pursuant to this subheading, are instead entered under 2105.00.40. Plaintiff's mellorine was liquidated under 2105.00.40.

[42]Defendant simply notes that in this case, Customs has classified mellorine consistently with the description of NYRL H83504. (Def.'s MSJ 2.)

[43]Pl.'s MSJ 7 (citing Structural Indus., Inc. v. United States, 356 F.3d 1366, 1370 (Fed. Cir. 2004.)).

of dairy products "described in additional U.S. note 1 to chapter 4," the only one that pertains to mellorine is "articles of milk or cream."   This phrase is not defined in the HTSUS, and the parties dispute whether mellorine is an article of milk or cream. Therefore, the Court must construe the term to determine its proper meaning, and then decide whether the term encompasses mellorine.

The Court finds that the Customs classification ruling pertaining to certain milk-based beverages, cited by Defendant, does not warrant <u>Skidmore</u> deference either in the Court's ultimate question—the proper classification of mellorine—or in the immediate task of construing the phrase "articles of milk or cream."

> Under the <u>Skidmore</u> standard articulated in <u>Mead</u>, a classification ruling may at least seek a respect proportional to its power to persuade.  <u>Mead</u> teaches that whether <u>Skidmore</u> deference should be afforded to a Customs classification ruling varies depending on its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight.

<u>Structural Indus.</u>, 356 F.3d at 1370 (internal citations and quotations omitted).  Contrary to Defendant's characterization, HQ 952776 does not "set forth a detailed and careful analysis for [Customs'] determination of what may constitute an article of dairy."[44] Instead, the ruling letter addresses the considerably narrower question of what percentage of milk solids a beverage needs to have in order to "have an appreciable amount of milk."  HQ 952776 at 2.  This ruling letter lacks the power to persuade in the

---

[44]<u>See</u> Def.'s MSJ 16.

present case because mellorine is not a beverage, and because the varieties of mellorine imported by Arko Foods contain not just water and sweeteners, but significant quantities of vegetable fat and various fruit purees and preserves as well.[45]  Moreover, the Court is not concerned with the quantity of milk solids necessary to make a beverage have an "appreciable amount of milk," but rather with what makes a food product an article of milk or cream.

The Court is persuaded that the factors set out in Wilsey Foods for determining whether a product was a "food preparation of milk or cream" provide an appropriate rubric for determining what constitutes an "article of milk or cream" within the meaning of additional U.S. note 1 to Chapter 4 of the HTSUS.[46]  Specifically, in determining if an item is an article of milk or cream, the Court will consider whether milk or cream is the essential ingredient, the ingredient of chief value, and the preponderant ingredient.  See Wilsey Foods, 18 CIT at 213.  Additionally, the Court will consider any evidence that mellorine is considered an article of milk or cream within

---

[45]Additionally, NYRL H83504, the ruling letter obtained in 2001 by Arko Foods stating that mellorine would be classified under HTSUS 2105.00.30 or 2105.00.40, does not warrant Skidmore deference.  Defendant has justly avoided asserting that it does, as the ruling letter is barren of any logical explanation for this classification, and therefore lacks any power to persuade.

[46]The Court also notes that in Arbor Foods, Inc. v. United States, 30 CIT __, __, 2006 WL 1359965 at *6, the court relied on this approach from Wilsey Foods to determine whether a particular product was a food preparation "of gelatin."

the industry.  See id.  On the basis of the record assembled before the Court, including various stipulations[47] by the parties, the Court concludes that mellorine is not an article of milk or cream.

### 1.    Milk or Cream is Not the Essential Ingredient

In order for mellorine to be labeled and sold as such in the United States, it must conform with the "standard of identity" set out by FDA regulation.  In pertinent part, the regulation states:

> Mellorine is a food produced by freezing, while stirring, a pasteurized mix consisting of safe and suitable ingredients including, but not limited to, <u>milk-derived nonfat solids</u> and <u>animal or vegetable fat, or both, only part of which may be milkfat</u>.  Mellorine is sweetened with <u>nutritive carbohydrate sweetener</u> and is characterized by the addition of flavoring ingredients.

21 C.F.R. § 135.130(a)(1) (2006) (emphasis added).  The Court finds that while "milk-derived nonfat solids" make up <u>an</u> essential ingredient of mellorine, they do not make up <u>the</u> essential ingredient.  According to this standard of identity, mellorine must also include animal or vegetable fat and nutritive carbohydrate sweetener.

Moreover, the Court notes that the mere presence of milk-derived ingredients in a product does not make that product "an article of milk or cream" within the meaning

---

[47]The Court has treated as stipulations those facts set forth by Plaintiff or Defendant and accepted as true by the opposing party. (<u>Compare</u> Pl.'s Facts, <u>with</u> Def.'s Resp. Facts; <u>and</u> Def.'s Facts, <u>with</u> Pl.'s Resp. Facts.)  The Court also accepts the information submitted by Plaintiff regarding cost data for mellorine, to which Defendant stipulated.  (<u>See</u> Defendant's Stipulation Concerning Cost Data (Docket # 61).)

of additional U.S. note 1 to Chapter 4.  For example, in other standards of identity issued by the FDA, there are products which are similarly required to have milk-derived ingredients, but which do not thereby become articles of milk or cream.  For instance, 21 C.F.R. § 136.130, governing "Milk bread, rolls, and buns," states that "the only moistening ingredient permitted in the preparation of the dough is milk or, as an alternative, a combination of dairy products [meeting certain technical specifications.]" 21 C.F.R. § 136.130 (2006).  Similarly, 21 C.F.R. § 139.120 requires that in milk macaroni products, "milk [or certain specified milk ingredients] is used as the sole moistening ingredient in preparing the dough."  21 C.F.R. § 139.120 (2006).  That milk bread and milk macaroni are likely not "articles of milk or cream" within the meaning of additional U.S. note 1 to chapter 4 suggests that the mere presence of dairy in a given product is not controlling, and underscores that the multi-faceted consideration of Wilsey Foods is reasonable and justified.

> **2.** **Milk or Cream is Not the Ingredient of Chief Value in Most Varieties of Mellorine**

Turning to the second factor from Wilsey Foods, upon considering the stipulation of the parties indicating the relative value of the different ingredients in each flavor of mellorine, the Court finds that milk is not the ingredient of chief value in mellorine.  Skim milk powder is the ingredient of [[                    ]] in [[

]] varieties of mellorine, and in relative terms, the value of milk-derived

ingredients is frequently a [[                    ]] of the value of the signature fruit preserve or puree in each flavor.[48]  In one flavor of mellorine, [[                              ]] is the ingredient of chief value, but if the value of [[                                ]] in that flavor are combined, the milk-derived ingredients would fall to the same position it occupies in the other flavors of mellorine: second.[49]  The Court again notes, however, the prudence of allowing a three-part rubric to determine whether a given product is an article of milk or cream.  When the relative value of milk-derived ingredients for this flavor of mellorine is considered alongside of the essentiality and preponderance of the milk-derived ingredients, it becomes clear that different flavors of mellorine do not require classification under different subheadings.

### 3.   *Milk or Cream is not the Preponderant Ingredient in Mellorine*

As in <u>Wilsey Foods</u>, the Court finally considers whether milk or cream is the preponderant ingredient in mellorine.  It is not.  In most varieties of mellorine, there is more water, sugar, fruit preserve or puree and vegetable oil than milk.  In order of preponderance, milk-derived ingredients range from third to sixth most prevalent ingredient among the varieties of mellorine at issue in this litigation.[50]

---

[48]<u>See</u> <u>Confidential Declaration of Florecita C. Fernandez</u> (October 19, 2009) (stipulated to by Defendant November 12, 2009 (Docket #61)).

[49]<u>See</u> <u>id.</u>

[50]Def.'s MSJ Conf. Exhibit 3.

### 4. Other Considerations

In Wilsey Foods, after setting out the rubric analyzed above, the court also noted that "in any event [the products] were not considered milk or cream products in the industry." Wilsey Foods, 18 CIT at 213. Industry treatment is therefore not irrelevant to the Court's determination, and the Court considers the testimony of the government's expert witness that the frozen dessert industry considers mellorine to be a dairy product to have some persuasive weight. However, Dr. Bradley's testimony is of limited value because the Court's obligation is not to determine whether mellorine is a dairy product in general, but rather whether it is a specific type of dairy product: namely, a dairy product described in additional U.S. note 1 to Chapter 4 as an article of milk or cream. The question of whether mellorine is an article of milk or cream for tariff classification purposes is a decision that lies within the sole discretion of the Court on the basis of the record assembled before it. See Jarvis Clark, 733 F.2d at 878 ("the court's duty is to find the correct result") (emphasis in original).

Because the Court finds that milk or cream is not the essential ingredient, not the ingredient of chief value and not the preponderant ingredient in mellorine, the Court finds that the Plaintiff has carried its burden of proof, and rebutted the presumption of correctness that attaches to Customs' classification. However, as Plaintiff has not identified an alternative subheading within heading 2105, the Court finds that neither

Plaintiff nor Defendant have advanced the proper tariff subheading for mellorine.

### III. The Proper Classification of Mellorine is HTSUS 2105.00.50

Plaintiff has not, and is not required to, establish the correct classification of

mellorine to prevail in its case. See id. In a case such as this, where Plaintiff has

succeeded only in demonstrating the incorrectness of Customs' preferred classification,

the final step of classification belongs to the Court. See id. In its entirety, the text of

HTSUS heading 2105 reads:

| | | |
|---|---|---|
| 2105.00 | Ice cream and other edible ice, whether or not containing cocoa: | |
| | Ice cream: | |
| 2105.00.05 | Described in general note 15 of the tariff schedule and entered pursuant to its provisions | |
| 2105.00.10 | Described in additional U.S. note 5 to this chapter and entered pursuant to its provisions | |
| 2105.00.20 | Other | |
| | Other: | |
| | | Dairy products described in additional U.S. note 1 to chapter 4: |
| 2105.00.25 | | Described in general note 15 of the tariff schedule and entered pursuant to its provisions |
| 2105.00.30 | | Described in additional U.S. note 10 to chapter 4 and entered pursuant to its provisions |
| 2105.00.40 | | Other |
| 2105.00.50 | Other | |

See heading 2105, HTSUS (2005). Having determined that mellorine is an "other edible

ice" within the meaning of heading 2105, but not a dairy product described in

additional U.S. note 1 to Chapter 4, there remains only one subheading under which it

can be classified: 2105.00.50 "Ice Cream and other edible ice, whether or not containing

cocoa: Other: Other" at a duty rate of 17% *ad valorem*. See id.

On December 8, 2009 the Court submitted a letter to the parties soliciting their perspectives and comments on the appropriateness of HTSUS 2105.00.50 as a classification for mellorine. Plaintiff states that it "fully agrees" with this classification, but only "[t]o the extent the Court may be considering . . . 2105.00.3000 or 2105.00.4000 as incorrect."[51] Plaintiff then proceeds to reiterate its argument that GRI 3(b) directs the tariff classification of mellorine under heading 0811. Defendant, in its response to the Court's request, states that "2105.00.50, HTSUS, is not an appropriate classification for the different flavors of mellorine at issue. Mellorine is not only an edible ice, it is also a dairy article."[52]

After considering the positions of the parties, the Court's opinion remains unchanged. The Court notes that Defendant, in its opposition to the Court's proffered subheading, goes to great length to demonstrate how mellorine is a "dairy product" or "dairy article."[53] As already explained, supra at 21-22, this is not the precise question facing the Court, and the Court finds Defendant's arguments unavailing.

---

[51]Pl.'s Letter of December 16, 2009 at 1 (Docket # 67.)

[52]Def.'s Public Response to the Court's December 8, 2009 Letter at 1 (Docket # 68.) (Defendant did not file a confidential version of this letter.)

[53]See generally, id.

CONCLUSION

As explained above, Plaintiff moved the Court for partial summary judgment, which is appropriate "when it appears that some aspects of a claim are not genuinely controvertible [but] genuine issues remain regarding the rest of the claim." Ugg Int'l, 17 CIT at 83. Because there is no dispute between the parties as to the nature of the merchandise involved in this case, and the only issues to be resolved are legal, there is no need merely to grant partial summary judgment;[54] the case is ripe for disposal at the summary judgment stage. See e.g., Value Vinyls, Inc. v. United States, 31 CIT __, __, 2007 WL 273839 at *2 (2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).)

Because the Court agrees with Defendant's preferred tariff heading, but also agrees with Plaintiff's challenge to Customs' preferred tariff subheading, Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part, and Defendant's Motion for Summary Judgment is granted in part and denied in part. For the foregoing reasons, and pursuant to the Court's independent obligation to determine

---

[54]In challenging Customs' preferred tariff subheading for mellorine, Plaintiff has asked the Court to issue an order determining that "the term 'dairy product' in heading 2105 excludes merchandise in which the dairy component is a minor ingredient." (Pl.'s MSJ 1.) While the Court agrees with Plaintiff that mellorine is not an article of milk or cream, the Court declines to issue this specific form of broad declaratory relief.

the correct tariff classification, Plaintiff's entries of the subject merchandise shall be

reliquidated under HTSUS 2105.00.50.  Judgment to enter accordingly.


/s/ Gregory W. Carman
Gregory W. Carman, Judge

Dated: December 22, 2009
    New York, New York